## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**MARIA V.,**[1]

      **Plaintiff,**

                             **Case No. 2:23-cv-3447**
    **v.**                           **Magistrate Judge Norah McCann King**

**FRANK BISIGNANO,**[2]
**Commissioner of Social Security,**

      **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Maria V. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

# I.    PROCEDURAL HISTORY

On January 27, 2017, Plaintiff filed her application for benefits, alleging that she has been disabled since August 8, 2016. R. 148, 158, 592–93. The application was denied initially and upon reconsideration. R. 221–26, 233–35. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 236–37. ALJ Peter Lee held hearings on September 18, 2019, and January 16, 2020, at which Plaintiff, who was represented by counsel, testified, as did vocational experts. R. 85–46.[3] In a decision dated January 31, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from August 8, 2016, Plaintiff's alleged disability onset date, through December 31, 2019, the date on which, the ALJ found, Plaintiff was last insured for benefits. R. 191–205 ("the 2020 decision"). On December 22, 2020, the Appeals Council granted Plaintiff's request to review that decision and vacated the 2020 decision, remanding for resolution of the following issues:

- The hearing decision states that the claimant last met the insured status requirements of the Social Security Act on December 31, 2019 and that the claimant was not disabled from the alleged onset date of August 8, 2016 through December 31, 2019 (Decision, pages 3 and 12). However, records available when the decision was issued indicate that the claimant's date last insured is December 31, 2020 (Exhibit 14D, page 1). Therefore, there is an unadjudicated period from January 1, 2020 through the date of the decision.

- Exhibits 22F & 23F consist entirely of records belonging to another individual. Exhibit 14F, page 31 consists of information belonging to a third individual. The decision contains multiple references to these exhibits (see pages 5 & 10-12). Namely, the hearing decision considers Exhibit 22F as a factor in determining the claimant's residual functional capacity (Decision, page 13). Further consideration is warranted.

- The claimant's most recent exam on December 5, 2019 indicates right shoulder impingement syndrome (Exhibit 33F, page 5). Specifically, it revealed tenderness, subacromial impingement, restricted range of motion and a positive Hawkins sign (p4). The decision does not address these findings. Additional consideration is necessary.

---

[3] A Spanish interpreter appeared on Plaintiff's behalf at all administrative hearings. *Id.*

2

Upon remand the Administrative Law Judge will:

- Consider the issue of disability beginning with August 8, 2016, the alleged onset date, through the earlier of the hearing decision date or the date last insured.
- Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512). The additional evidence may include, if warranted and available, a consultative examination with psychological testing and medical source opinions about what the claimant can still do despite the impairments.

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 85-16 and 96-8p).

- Give further consideration to whether the claimant has past relevant work and, if so, can perform it (20 CFR 404.1560(a)-(b)). If warranted, obtain vocational expert evidence to assist in evaluating whether the claimant can perform past relevant work.

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to determine whether the claimant has acquired any skills that are transferable with very little, if any, vocational adjustment to other occupations under the guidelines in Social Security Ruling 82-41. The hypothetical questions should reflect the specific capacity/limitations established by the records as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of such appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

R. 215–16.[4]

---

[4]*See also* R. 216 (noting that Plaintiff also "alleged that 'perhaps, it is because I'm Hispanic (sic)'" as an apparent basis for remand, but "[a]fter reviewing the entire record, including the hearing recording, the Appeals Council determined that the Administrative Law Judge did not abuse his or her discretion in this case. The Council found, however, another reason for remand").

On remand, the ALJ held a hearing on February 7, 2022, at which Plaintiff, who was again represented by counsel, again testified; a vocational expert also testified. R. 63–83. In a decision dated February 25, 2022, the ALJ again concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from August 8, 2016, Plaintiff's alleged disability onset date, through December 31, 2020, the date on which Plaintiff was last insured for benefits. R. 30–52. That decision became final when the Appeals Council declined review on April 21, 2023. R. 10–17. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF Nos. 4, 5.[5] On August 14, 2023, the case was reassigned to the undersigned. ECF No. 6. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[5]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a
comprehensive explanation for the rejection of evidence; in most cases, a sentence or short
paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent
such articulation, the Court "cannot tell if significant probative evidence was not credited or
simply ignored." *Id.* at 705. As the Third Circuit explains:

6

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.    Sequential Evaluation Process

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between August 8, 2016, her alleged disability onset date, and December 31, 2020, the date on which her insured status lapsed. R. 33.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease; meniscal cyst (left knee); sleep apnea; obesity; bilateral foot neuroma; aneurysm without rupture (status post); migraine headache; adjustment disorder with depressed mood; and anxiety. *Id.* The ALJ also found that the following impairments were not severe: shoulder impingement (bilateral), status-post left shoulder arthroscopy, shoulder tenderness (bilateral), hypertension, hyperlipidemia, presbyopia, and diabetes. R. 34–35.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 35–39.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 39–52. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as an inspector/packer; assembler; and machine operator. R. 52. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 8, 2016, her alleged disability onset date, through December 31, 2020, the date on which she was last insured. *Id.*

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 14; *Plaintiff's Reply*

9

*Brief*, ECF No. 22. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 19.

## IV.    DISCUSSION

Plaintiff challenges the ALJ's step three finding that Plaintiff's migraine headache impairment neither meets nor medically equals a listed impairment. *Plaintiff's Brief*, ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 19. Plaintiff's arguments are well taken.

At step three, an ALJ must consider whether the combination of the claimant's medically determinable impairments meets or medically equals the severity of any impairment in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220

10

F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id.*

There is no separate listing for primary headache disorders such as migraine headaches. SSR 19-4p, 2019 WL 4169635, at *2, 7 (Aug. 26, 2019); *see also id.* at *3 (explaining, *inter alia*, that "[p]rimary headaches occur independently and are not caused by another medical condition. Secondary headaches are symptoms of another medical condition such as fever, infection, high blood pressure, stroke, or tumors" and that "[p]rimary headache disorders are a collection of chronic headache illnesses characterized by repeated exacerbations of overactivity or dysfunction of pain-sensitive structures in the head [including, *e.g.*, migraines]"). However, SSR 19-4p instructs that migraines, alone or in combination with another impairment(s), may medically equal Listing 11.02, which "is the most closely analogous listed impairment for an MDI [medically determinable impairment] of a primary headache disorder." *Id.* at *7. "While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing." *Id.* SSR 19-4p

Listing 11.02 addresses epilepsy. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02. As relevant to this case, 11.02B and 11.02D, require the following:

> 11.02 Epilepsy, *documented by a detailed description* of a typical seizure and characterized by . . . B . . . or D:

B. Dyscognitive seizures (see 11.00H1b),[6] *occurring at least once a week for at least 3 consecutive months* (see 11.00H4)[7] despite adherence to prescribed treatment (see 11.00C); or . . .

D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:

1. Physical functioning (see 11.00G3a); or
2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
3. Interacting with others (see 11.00G3b(ii)); or
4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.02B, D (emphasis added). The required number of

seizures (or, in the instant case, migraine headaches) must occur within the relevant period or

---

[6] Listing 11.00H1a, b provides as follows:

1. Epilepsy is a pattern of recurrent and unprovoked seizures that are manifestations of abnormal electrical activity in the brain. There are various types of generalized and "focal" or partial seizures. However, psychogenic nonepileptic seizures and pseudoseizures are not epileptic seizures for the purpose of 11.02. We evaluate psychogenic seizures and pseudoseizures under the mental disorders body system, 12.00. In adults, the most common potentially disabling seizure types are generalized tonic-clonic seizures and dyscognitive seizures (formerly complex partial seizures).

a. Generalized tonic-clonic seizures are characterized by loss of consciousness accompanied by a tonic phase (sudden muscle tensing causing the person to lose postural control) followed by a clonic phase (rapid cycles of muscle contraction and relaxation, also called convulsions). Tongue biting and incontinence may occur during generalized tonic-clonic seizures, and injuries may result from falling.

b. Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. During its course, a dyscognitive seizure may progress into a generalized tonic-clonic seizure (see 11.00H1a).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.00H1a, b.
[7] This subsection, 11.00H4, is addressed next.

continuing disability review. *Id.* at § 11.00H4 (explaining further, *inter alia*, that multiple seizures occurring in a 24-hour period count as one seizure).

As detailed above, when evaluating the frequency of the event (in this case, migraine headache), a claimant's adherence to prescribed treatment is also considered. *Id.* § 11.02B, D; *see also id.* at § 11.00H4 (citing *id.* at § 11.00C). Limitations resulting from the disorder must exist despite adherence to prescribed treatment. *Id.* at § 11.00C. "'Despite adherence to prescribed treatment' means that [the claimant has] taken medication(s) or followed other treatment procedures for [the claimant's] neurological disorder(s) as prescribed by a physician for three consecutive months but [the claimant's] impairment continues to meet the other listing requirements despite this treatment." *Id.* Events that occur during a period when the claimant is "not adhering to prescribed treatment without good reason" will not be counted. *Id.* at § 11.00H4d. A claimant will be considered to have "good reason for not following prescribed treatment if, for example, the treatment is very risky for [the claimant] due to its consequences or unusual nature, or if [the claimant is] unable to afford prescribed treatment that [the claimant is] willing to accept, but for which no free community resources are available." *Id.*

In the present case, the ALJ determined at step two of the sequential evaluation that Plaintiff suffered from the severe impairment of, *inter alia*, migraine headaches. R. 33. The ALJ determined at step three that Plaintiff's did not have an impairment or combination of impairments that "met or medically equaled the severity of any one of the listed impairments[.]" R. 35–39. Specifically, as to migraine headaches, the ALJ reasoned as follows:

> The claimant has migraine headaches. SSR 19-4p notes that there is no listing for headache disorders, but states that a primary headache disorder, alone or in combination with another impairment(s) may equal a listing. SSR 19-4p states that listing 11.02 is the most closely analogous listing for a medically determinable impairment of primary headache disorder.

Listing 11.02B requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. Listing 11.02D requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one of the following: 1. Physical functioning; 2. Understanding, remembering, or applying information; 3. Interacting with others; 4. Concentrating, persisting, or maintaining pace; or 5. Adapting or managing oneself.

I note that the claimant has generally not required hospitalization, urgent care, or ER care due to her headaches. The claimant *does not have marked limitation in physical functioning*, as indicated by the fact that she is able to travel (Exhibit 52F). As discussed in the evaluation of the claimant's depression and anxiety, the claimant *also does not have marked limitation* in any of the following: Understanding, remembering, or applying information; Interacting with others; Concentrating, persisting, or maintaining pace; or Adapting or managing oneself. Therefore, I find that the claimant's migraine headaches, even when considered in combination with her other impairments, *do not equal* Listings 11.02B or 11.02D, or any other applicable listing.

R. 36 (emphasis added). At step four the ALJ further considered Plaintiff's migraine headaches:

In the course of treatment for her spine disorders, the claimant was evaluated and treated for her headaches; however, the objective evidence does not support a more restrictive limitation than assessed (Exhibits 17F; 18F; and 25F). In May 2018, an MRI of the claimant's head showed mild chronic small vessel ischemic change (Exhibit 17F, p. 13, and Exhibit 31, p. 20). Although the claimant reported intermittent headaches with associated symptoms of light and sound sensitivity (Exhibit 18F, p. 22), treatment notes show that Tylenol generally provided pain relief (Exhibit 18F, p. 5). Moreover, there is no documented evidence of premonitory symptoms, such as aura or dizziness.

Subsequent treatment notes reflect the claimant's report that Pamelor helped reduce the frequency of her headaches, *even though she was not fully compliant with her medication regimen* (Exhibit 25F, p. 2). The claimant continued to report pressure-like pain with occasional bilateral blurred vision (Id. p. 2), but neurological examinations showed overall intact cranial nerves with no focal neurologic deficits (Exhibit 26F, p. 10; and Exhibit 31F, p. 91). Further, coordination was intact, and the claimant was able to stand and walk with no difficulty (Exhibit 31F, p. 91). Notably, there is little to no evidence that the claimant's migraine headaches worsened with routine physical activity.

Progress notes from Dr. Miller from February 26, 2020 note that the claimant reported that her *headaches improved with Nortriptyline, but continued to occur*. The claimant reported that Tylenol helps with her headaches (Exhibit 50F, p. 198-199).

Progress notes from May 26, 2020 note that the claimant reported improved control of her headaches on Nortriptyline for prevention. The claimant stated that she *uses Tylenol about twice a week for abortive therapy*. Follow up was planned in 6 months (Exhibit 50F, p. 172-173). Progress notes from November 24, 2020 note that the claimant was seen for follow up evaluation of her headaches. The claimant was last seen in the headache clinic in December 2019. The claimant stated that the quality of her headaches is unchanged, *but she is getting headaches almost every day*. Headaches are triggered when she cannot fall asleep and when she exercises. Tylenol usually resolves her pain. It was noted that a recent CT scan of the head was reported as stable. Dr. Avagyan stated that the claimant's migraine headaches may be due to poor sleep patterns. *The claimant's Nortriptyline was increased to 75 mg* [sic][8] *nightly.* Follow up was planned in 3 months (Exhibit 50F, p. 132-136).

Progress notes from March 30, 2021 note that the claimant was last seen for her headaches in November 2020. *The claimant was having frequent headaches and her Nortriptyline was increased to 75 mg nightly.* The claimant reported that she gets few headaches now and that Tylenol usually resolves her pain. She also reported that her sleep has improved, and that gait therapy has significantly improved her symptoms, noting that she had not had any falls since her last visit. The claimant's migraine headaches were noted to be controlled with Nortriptyline (Exhibit 50F, p. 101-103).

R. 45–46 (emphasis added).

Plaintiff disagrees with the ALJ's finding at step three as it relates to her migraine headaches. *Plaintiff's Brief*, ECF No. 14, pp. 9–17. First, she contends that the ALJ incorrectly stated that marked limitations were required to medically equal the requirements of Listing 11.02B, when those limitations are required only under Listing 11.02D. *Id*. at 11–12. Plaintiff also complains that the ALJ did not refer to the frequency or duration of her headaches, thereby failing to properly consider the requirements of Listing 11.02B. *Id*. at 12. Plaintiff goes on to argue that the record establishes that she medically equals Listing 11.02B, pointing out that she continuously complained of chronic headaches; her headaches "were described" as associated with photophobia and phonophobia; her pain was rated as seven on a ten-point scale; her associated symptoms include sensitivity to light and sound, blurred vision, and forgetfulness; she

---

[8] Plaintiff's Nortriptyline dosage was increased to 50 mg at this time. R. 3282, Exhibit 50F/133.

experienced dizziness and an inability to focus for 20 to 30 minutes . *Id*. at 13–14 (citations

omitted) (emphasis in the original). Plaintiff satisfies the frequency requirement, she argues,

because the evidence establishes that her headaches varied between daily or one to three times

weekly, and lasted up to two hours, for a period of years. *Id*. at 14–15. She acknowledges that

there exist "some early notes that Plaintiff was not compliant with her prescribed medication,"

but she contends that "later notes indicated that Plaintiff was compliant with taking

Nortriptyline." *Id*. at 15 (citations omitted). In short, Plaintiff argues that the ALJ's failure to

properly consider Listing 11.02B constitutes reversible error. *Id*. at 15–17 (citing *Falardo-Weller*

*v. Kijakazi*, No. 3:22-CV-01026, 2023 WL 6119101 (M.D. Pa. Sept. 18, 2023); *Tyson v.*

*Kijakazi*, 1:21-CV-855, 2022 WL 3975002 (M.D. Pa. July 25, 2022), *report and*

*recommendation adopted*, 1:21-CV-00855, 2022 WL 3971041 (M.D. Pa. Aug. 31, 2022)).

      For his part, the Commissioner contends that the ALJ correctly applied the criteria of

Listing 11.02, noting that the ALJ explained the requirements for both Listing 11.02B and

11.02D. *Defendant's Brief*, ECF No. 19, pp. 11–13 (citing R. 36). According to the

Commissioner, Plaintiff's complaint that the ALJ failed to expressly refer to the frequency or

duration of her migraines is mis-guided in light of SSR 17-2p, which addresses medical

equivalence and which provides that "'a statement that the individual's impairment(s) does not

medically equal a listed impairment constitutes sufficient articulation for this finding.'" *Id*. at 13

(quoting SSR 17-2p, 2017 WL 3928306, at *4, and citing *Angelyn H. v. Kijakazi*, No. 4:21-CV-

00088-PK, 2022 WL 1665014, at *2 (D. Utah May 25, 2022)). Nevertheless, the Commissioner

notes, the ALJ went on to further consider Plaintiff's migraine headaches at step four of the

sequential evaluation process: he considered the duration and frequency of "intermittent"

headaches, evidence that the headaches improved with Tylenol and Pamelor, and evidence that

Plaintiff was not fully compliant with her prescribed treatment. *Id*. (citing R. 45–46). The Commissioner also refers to SSR 19-4p, which provides that an ALJ will consider a detailed description, from an acceptable medical source, of a typical headache event, and argues that Plaintiff failed to meet this criterion because she cites only her own subjective statements. *Id*. at 13–14. The Commissioner therefore takes the position that the Court "may reasonably discern" that the ALJ properly found that Plaintiff's migraine headaches do not medically equal Listing 11.02B or 11.02D. *Id*. at 14–15.

The Court concludes that the matter must be remanded to the Commissioner for further consideration of Listing 11.02B. The ALJ's step three analysis did not adequately address the requirements of Listing 11.02B because the ALJ failed to address, *inter alia*, the frequency and duration of Plaintiff's migraine headaches (*i.e.*, one or more headaches a week over a period of multiple years). R. 36; *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.02B; *Marielena R. v. Dudek*, No. CV 24-1006, 2025 WL 834751, at *6–7 (E.D. Pa. Mar. 17, 2025) (finding reversible error where "the entirety of his medical equivalence discussion was comprised of two sentences that did not mention the factors SSR 19-4p identified as relevant to determining whether a claimant's migraine headaches medically equal Listing § 11.02. . . . Hence, he did not explicitly consider them. Also, the ALJ, in his cursory discussion, failed to acknowledge Plaintiff's testimony that her migraine frequency was, at best, two to three headaches each week for many years") (citations omitted); *Fewell v. O'Malley*, No. 1:23-CV-00865, 2024 WL 4182115, at *5–6 (M.D. Pa. Aug. 19, 2024), *report and recommendation adopted*, No. 1:23-CV-0865, 2024 WL 4173790 (M.D. Pa. Sept. 12, 2024) ("But the ALJ does not include an analysis of many of the factors associated with Listing 11.02. . . . He fails to include a detailed description of a typical headache, the frequency of Fewell's headaches after improvement, Fewell's adherence to

prescribed treatment,[] or the side effects of treatment. Because the ALJ failed to evaluate on the record the applicability of 11.02B and D, despite the record suggesting that Fewell may meet these requirements, 'the ALJ's decision prevents the Court from conducting a meaningful, albeit deferential, review.'") (citations omitted); *Schmeltzly v. O'Malley*, No. CV 23-1629, 2024 WL 219420, at *5 (E.D. Pa. Jan. 18, 2024) ("Even the lowest reported migraine frequency over the relevant period far exceeds the frequency requirements of LI 11.02, paragraph B. The ALJ's failure to acknowledge this evidence in her cursory treatment of the medical equivalency decision constitutes reversible error.") (citations omitted).

The Court is not persuaded by the Commissioner's argument that the ALJ's failure in this regard is not error because SSR 17-2p requires only a statement that Plaintiff does not medically equal a listed impairment. As discussed in more detail below, the ALJ's decision does not explain why Plaintiff's migraine headaches did not medically equal Listing 11.02B or on what basis the ALJ so found. R. 36–52. *See Lena K. v. Bisignano*, No. CV 25-692, 2025 WL 2989756, at *5 (E.D. Pa. Oct. 22, 2025) (finding that the ALJ's medical equivalence discussion did not comply with SSR 17-2p where "the ALJ never cited SSR 17-2p as the reason she provided a terse discussion of medical equivalence concerning Plaintiff's migraines" and "the remainder of the ALJ's decision does not reveal the reason the ALJ failed to find that Plaintiff's migraine headaches did not medically equal the relevant listed impairment"); *see also Acevedo v. Comm'r of Soc. Sec.*, No. 8:23-CV-2801-LSG, 2025 WL 892584, at *5 (M.D. Fla. Mar. 24, 2025) ("Although SSR 17-2p explains generally how an ALJ must evaluate an impairment's listing-level equivalency, SSR 19-4p specifically instructs ALJs on how to evaluate headache disorders. As written, the ALJ's decision presents no discussion on Acevedo's headache frequency,

duration, or severity in accord with SSR 19-4p. The ALJ's blanket statement that she considered certain rulings and found no equivalency is insufficient and unsupported by the record.").

The Commissioner's reliance on the ALJ's discussion of the medical evidence at step four is unavailing. At step four, the ALJ acknowledged evidence that would support a finding that Plaintiff met the frequency and duration requirements of Listing 11.02B: Plaintiff suffered from headaches at least twice a week (she stated that she used Tylenol twice weekly for abortive therapy) in May 2020 despite improved control with Nortriptyline, R. 45, and having headaches almost every day in November 2020, R. 45–46. This evidence is inconsistent with the ALJ's conclusion at step three that Plaintiff's headache impairment does not medically equal Listing 11.02B. *See Manges v. Dudek*, No. 1:24-CV-00036, 2025 WL 823955, at *9 (M.D. Pa. Mar. 13, 2025) ("[W]e disagree with the Commissioner's position that the ALJ's later discussion was sufficient to satisfy his duty of articulation as to step three" where "the ALJ's discussion does not address the requirements of Listing 11.02B or 11.02D or the factors set forth in SSR 19-4p. In sum, the ALJ's conclusory step three analysis, even when coupled with his later discussion of Manges's headaches, 'prevents the Court from conducting a meaningful, albeit deferential, review.'") (citations omitted); *cf. Falardo-Weller v. Kijakazi*, No. 3:22-CV-01026, 2023 WL 6119101, at *8 (M.D. Pa. Sept. 18, 2023) ("While this evidence on its own may not be sufficient for a finding of significantly reduced functioning, the ALJ must explain why this evidence does not undermine his finding. . . . Therefore, the Court finds that because the record reflects evidence that would tend to support application of Listing 11.02, this case should be remanded.") (citations omitted); *Brown v. Kijakazi*, No. 20-CV-05391-RAL, 2021 WL 5356802, at *6 (E.D. Pa. Nov. 17, 2021) ("The ALJ's passing citations to improvement in Mr. Brown's condition do not cure the problem [of the ALJ's failure to engage with the medical evidence in any

19

meaningful manner]. A meaningful explanation of how an ALJ resolves contradictory evidence requires that the ALJ engage and discuss the contradictory evidence and explain why it is overcome by evidence that supports the ALJ's conclusion.").

Moreover, although not discussed by the ALJ, Plaintiff is correct that the record contains additional evidence relevant to the requirements of the listing, including, *inter alia*, that in July 2018, she experienced headaches three times per week over the prior two months, with pain rated at 7/10, and accompanied by photophobia and phonophobia, R. 1297; that in August 2018 she was taking Ibuprofen four times per month for headaches with associated photophobia and phonophobia, R. 3161; that in September 2019, she experienced headaches three times per week, with pain that caused dizziness, blurry eyesight, and an inability to focus, R. 134–35; that in December 2019, Plaintiff reported improvement with Nortriptyline, but she continued to experience at least three severe headaches per week with occasional blurred vision, R. 4375; that, in February 2020, it was noted that Nortriptyline helped but did not totally eliminate her headaches, R. 3347–48; that, in May 2020 and despite improvement with prescribed treatment, Plaintiff continued to suffer two headaches per week, R. 3321–22; that, in November 2020, Plaintiff experienced almost daily headaches with associated photophobia and phonophobia despite compliance with prescribed Nortriptyline, R. 3282–84.

The Commissioner notes that migraines occurring during a period of noncompliance cannot satisfy the listing, *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.00H4d, and emphasizes the ALJ's observation that Plaintiff was not fully compliant with her medication regimen, *see* R. 45. It is true that the record includes some evidence of non-compliance on the part of Plaintiff. R. 1363 (May 29, 2019, notation that Plaintiff "has not been totally compliant with Pamelor [Nortriptyline]"). However, this evidence does not necessarily foreclose a conclusion that the

requirements of Listing 11.02B have been satisfied because there is also evidence, as detailed

above, that Plaintiff still suffered migraines despite adherence to prescribed treatment.

Finally, the Commissioner argues that Plaintiff has not satisfied the requirements of

Listing 11.02B because she failed to submit a detailed description of her migraine headaches

from an acceptable medical source, but instead offered only her own description of her

headaches. *Defendant's Brief*, ECF No. 19, p. 14 (citing SSR 19-4p, 2019 WL 4169635, at *7).

It is true that SSR 19-4p provides that the ALJ will "*consider*[,]" among other things, *"[a]*

*detailed description from an AMS [acceptable medical source] of a typical headache event,*

including all associated phenomena (for example, premonitory symptoms, aura, duration,

intensity, and accompanying symptoms)[.]" SSR 19-4p, 2019 WL 4169635, at *7 (emphasis

added); *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.00H2 ("We require at least one

detailed description of your seizures from someone, *preferably a medical professional*, who has

observed at least one of your typical seizures.") (emphasis added). However, Plaintiff's providers

apparently or implicitly adopted or ratified Plaintiff's own descriptions of her headaches, as

evidenced by their treatment of Plaintiff, including their changes in medication and increases in

medication dosages in response to Plaintiff's descriptions. For example, in December 2019,

Plaintiff reported, despite improvement with Nortriptyline, that she continued to suffer at least

three severe headaches per week with occasional associated blurred vision, and her provider

increased her Nortriptyline dosage to 50 mg. R. 4375. In February 2020, when Plaintiff reported

continued headaches despite her use of Nortriptyline, her provider considered a change in

medication. R. 3347–48, 4346–47. In November 2020, Plaintiff reported that she continued to

suffer from headaches almost every day with associated photophobia and phonophobia despite

compliance with Nortriptyline, and her treating physician increased the dosage of her prescribed

Nortriptyline to 75 mg. R. 45–46, 3282–84. Under these circumstances, the Court concludes that further consideration of this issue is warranted. *Cf. Brown*, 2021 WL 5356802, at *5 ("While this evidence on its own may not be sufficient for a finding of significantly reduced functioning, the ALJ must explain why this evidence does not undermine her finding.[] After all, the description of Mr. Brown's headache symptoms, apparently accepted as accurate by the doctors who treated and examined Mr. Brown, matches the symptoms described in SSR 19-4p."); *but see Tracia B. v. Comm'r of Soc. Sec.*, No. 1:24-CV-681, 2025 WL 1119126, at *6 (W.D. Mich. Apr. 16, 2025) ("[E]ven if the ALJ erred by applying the incorrect standard, the evidentiary record does not satisfy the requirements of SSR 19-4p because it lacks a detailed description of a typical headache event from an acceptable medical source who has observed the event. . . . All of the evidence Plaintiff cites reflects only her subjective descriptions of her headaches, rather than observations from a medical provider who has observed a typical headache event. Given this lack of evidence from a medical provider, the ALJ properly determined that the record failed to support medical equivalence under listing 11.02(B).") (collecting cases); *Johnson v. Comm'r of Soc. Sec.*, No. 2:23-CV-2833 AC, 2025 WL 886755, at *6 (E.D. Cal. Mar. 21, 2025) ("None of plaintiff's treatment providers reported having observed a seizure event. And as noted above, there is no detailed description from an acceptable medical source of a typical headache event. Accordingly, the ALJ had no basis for a finding that plaintiff met or equaled Listing 11.02. There was no error at step three.").

In short, this Court cannot conclude that substantial evidence supports the ALJ's finding at step three that Plaintiff's migraine headaches do not medically equal Listing 11.02.[9]

---

[9] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Listing 11.02B the Court does not consider those assertions.

Moreover, remand is appropriate even if, upon further examination of the evidence and Listing 11.02, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

## V.    CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date:  October 29, 2025                           *s/Norah McCann King*
                                         NORAH McCANN KING
                                         UNITED STATES MAGISTRATE JUDGE

23